IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

      v.                                                                                                                                No. 1:21-cr-00153-01-SM

MICHAEL FRANCIS

SUPPLEMENT BASED ON NEW DISCOVERY
TO MOTION TO SUPPRESS EVIDENCE SEIZED WHEN
EXECUTING SEARCH WARRANT FOR A WHITE HONDA ACCORD

       The defense supplements its motion to suppress with new evidence that, in addition to the informant's Falsifying Physical Evidence conviction, Agent Burke omitted from his search warrant affidavit the newly revealed fact that, in the previous month, two Manchester Police officers had described the informant as "deceptive," "not telling me the truth," and "attempting to provide deceitful answers."

Agent Burke Has Already Acknowledged that He Omitted from his Affidavit the Informant's Conviction for a Crime of Dishonesty.

       The defense moved to suppress evidence seized from Mr. Francis's car because the affidavit in support of the search warrant did not state probable cause and because Agent Burke recklessly or intentionally omitted information which would have resulted in the magistrate finding no probable cause. Doc. 35. As set forth in the original motion, the omitted information was that the informant, on whose credibility the affidavit depended, was convicted of a felony crime of dishonesty, Falsifying Physical Evidence. *Id*. at 4. That conviction involved the informant attempting to conceal his guilt in a drug case.

       The hearing on the motion to suppress started on June 14, 2023, and continues tomorrow. In his June testimony, Agent Burke acknowledged that he was aware the informant had been

1

convicted of a felony crime of dishonesty. He said that he did not include that information in his affidavit because he decided it did not affect the informant's credibility.

The Government notified defense counsel by email on June 27, 2023, that new discovery was forthcoming. The Government then sought a protective order regarding the new discovery. The defense received a link from the Government on June 30, 2023, to download the new discovery. The defense could not download the discovery at the initial link provided but eventually was able to gain access to the discovery on July 3, 2023. The new discovery consisted of over 400 pages and 9 videos. The defense now supplements the motion to suppress with new information from that discovery.

Agent Burke Left Out Other Evidence of the Informant's Dishonesty.

The new discovery contains previously undisclosed evidence regarding the informant's dishonesty. The affidavit offered by Burke detailed the motor vehicle stops of the informant which led to his arrest and interrogation by the police, and then his accusations against Francis. However, it now turns out that two of the officers who conducted the motor vehicle stops of the informant were careful to note in their reports that the informant was being dishonest with law enforcement during those encounters. They said the informant was "deceptive," "not telling me the truth," and "attempting to provide deceitful answers."

Manchester Police Officer Brendan Newell stopped a car being driven by the informant on July 30, 2021. Officer Newell questioned the informant about where he had been and where he was going. After getting inconsistent answers, Officer Newell wrote in his report, "I believed [the informant] was being deceptive and not telling me the truth about who he was meeting." Later in the encounter, Officer Newell asked the informant, "what was in the driver's side door?" The informant answered, "sunglasses." The informant was lying. As detailed in the new

discovery, the police found a bag of crystal meth and a "loaded needle" in the driver's side door storage compartment.

Manchester Police Officer Austin Biery described a similar experience with the informant. Officer Biery said, "I also found this physical reaction and behavior to be suspicious and indicative of our suspicion of drug activity as [the informant] was clearly nervous, was providing erroneous statements, and was tripping over his own statements attempting to provide deceitful answers."

Since the Government sought a protective order regarding the new discovery, the reports of Officer Newell and Officer Biery are being filed under seal contemporaneous with this supplement.

The July 30, 2021, stop described by Officers Newell and Biery is selectively detailed in paragraph 8 of Agent Burke's affidavit for the search warrant. Agent Burke provided a variety of other details about the motor vehicle stop – the date, the kind of car the informant was driving, the police department involved, the specific drugs seized, and the specific weights of each kind of drug. Yet, Agent Burke left out of his affidavit the fact that two Manchester Police officers described the informant's dishonesty in that drug investigation. Reviewing the officers' reports, it is not reasonable to think that Agent Burke had all of the other details but did not know that the officers described the informant as "deceptive," "not telling me the truth," and "attempting to provide deceitful answers." The only reasonable conclusion is that Burke recklessly or intentionally omitted from his affidavit important information regarding the informant's credibility.

As already established, the informant had a relatively recent prior felony conviction for falsifying physical evidence. Agent Burke knew about that but left that out of the affidavit. Now,

the Government has revealed that during the July 30, 2021, motor vehicle stop of the informant detailed by Burke in his affidavit, two Manchester police officers described the informant as dishonest. Significantly, the July 30th conclusions of the two officers that the informant was dishonest came just a few weeks before Burke submitted his affidavit to Magistrate Lynch on August 25, 2021. In short, Agent Burke had information about his informant's recent and repeated dishonesty in drug investigations, yet he left that information out of his affidavit.

<u>If Agent Burke Had Told the Entire Story, Magistrate Lynch Would Not Have Found Probable Cause for the Search of Francis's Car</u>.

The Government has argued in its objection, Doc. 46, and Agent Burke claimed in the first hearing, that the informant was credible because he was "a known individual in law enforcement custody who was named in the unredacted affidavit submitted to the magistrate." Doc. 46, p. 8; *See generally, United States v. Tanguay*, 787 F. 3d 44, 50 (1st Cir. 2015). However, when the identity of the informant is considered in the light of Agent Burke's omissions regarding the informant's dishonesty, this factor cuts the other way. Yes, law enforcement knew the informant well, but stopping there leaves out the important part of the story. The fact is that they knew him well and knew he was not to be trusted. The problem is that law enforcement did not reveal that to the magistrate. In these circumstances, the Government cannot claim "he was known to us" as the basis for the informant's credibility when what was known, but not revealed to the magistrate, was that the informant recently and repeatedly lied to law enforcement during drug investigations.

The omissions by Burke relate to other factors the First Circuit says to consider in assessing an informant's credibility. *See United States v. Maglio*, 21 F.4th 179, 185 (1st Cir. 2021); *United States v. Gifford*, 727 F.3d 92, 99-102 (1st Cir. 2013); *United States v. Tiem Trinh*, 665 F.3d 1, 10 (1st Cir. 2011) (all discussed at length in the original motion suppress).

4

The First Circuit says to look at the "probable veracity" of the informant. Gifford, 727 F.3d at 99. The Government would argue that the probable veracity of this informant is high because his identity was known and he claimed to know details of incriminating conduct involving Mr. Francis. However, when those claims are reassessed in light of the informant's repeated and recent dishonesty, a finding of probable veracity cannot be justified. As Burke admitted in his testimony, no incriminating facts had been corroborated. The informant did not predict any future criminal behavior. He did not provide any text messages or call logs which might incriminate Francis. The only information which was actually corroborated were innocent facts, such as the description of the car Francis drove. Moreover, the fact the informant offered some details in his claims of criminal conduct by Francis is hardly persuasive. After all, the informant had offered details when he lied to Officer Newell less than one month before Burke submitted the affidavit. Lastly, the informant had no "track record." He had never provided law enforcement with reliable information in the past which turned out to be true. Rather, the circumstances are exactly the opposite. He provided information to law enforcement in the past which turned out to be false. Surely, if the magistrate had known of the informant's past lies, he would have doubted the "probable veracity" of the informant, especially in the absence of corroboration.

Similarly, Agent Burke cannot legitimately claim that when submitting the affidavit, he "assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's provided information." *Gifford*, 727 F.3d at 99; *Tiem Trinh*, 665 F.3d at 10. Burke left out of his affidavit the fact that, within previous month, two Manchester Police officers had described the informant as "deceitful," "deceptive," and "not telling the truth."

Skipping over those facts, in addition to the Falsifying Physical Evidence conviction, is not how a professional, experienced, and expert law enforcement officer assesses credibility.

Lastly, with respect to "first-hand knowledge" and "corroboration," *Gifford*, 727 F.3d at 99; *iem Trinh*, 665 F.3d at 10, the Court should recognize that when the informant's credibility is in doubt, claimed first-hand knowledge does not mean much if none of it is verified. To be sure, the informant made claims of receiving specific drugs in specific amounts for specific prices from Francis. No doubt, the informant was receiving such drugs in such a manner from someone, but the affidavit contains no evidence any such claims of criminal conduct were ever verified. There is no evidence at all corroborating that the informant had even met Francis. There is no corroborating evidence in the affidavit that they had ever talked or sent messages over the phone. The informant did not offer any specific dates. If he had, perhaps surveillance video from the claimed location would be available to support or refute his claims. The bottom line is that it is just common sense that corroboration is essential when the claimed first-hand knowledge comes from an informant known to be dishonest.

Conclusion

When both the omission regarding the informant's conviction for Falsifying Physical Evidence and the omission of the informant's deceptive and deceitful statements to Manchester Police officers are "read into" the affidavit, it clearly fails to provide probable cause for the search of Francis's car. The affidavit already relied on general claims by the informant that Francis provided drugs on unspecified dates, with no other witnesses, no physical evidence, and with no corroboration of any incriminating details. When the documented dishonesty of the informant is added to the mix, it is clear that a reasonable magistrate would not have found the affidavit to provide probable cause for the search.

.

Date: July 11, 2023                                      Respectfully submitted
                                                         by counsel for Michael Francis,

                                                         */s/ Richard Guerriero*
                                                         Richard Guerriero, Esq.
                                                         N.H. Bar No. 10530
                                                         Lothstein Guerriero, PLLC
                                                         Chamberlain Block Building
                                                         39 Central Square, Suite 202
                                                         Keene, NH 03431
                                                         Telephone: (603) 352-5000
                                                         richard@nhdefender.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the nonregistered participants on the date the document was signed by me.

_                                                        */s/ Richard Guerriero*
                                                         Richard Guerriero